**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 9 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DONNA BISHOP, a.k.a. Big Mama,

    Defendant-Appellant.

No. 96-3370
(District of Kansas)
(D.C. No. 95-CR-20086)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY,** and **MURPHY**, Circuit Judges.

18 U.S.C. § 1956(a)(1), enacted as part of the Anti-Drug Abuse Act of
1986, prohibits, *inter alia*, financial transactions involving funds that are the
proceeds of "specified unlawful activity," if such transactions are (1) intended to
facilitate that activity or (2) conceal the nature of the proceeds. *See* 18 U.S.C.
§ 1956(a)(1)(A)(i) (prohibiting use of illegal proceeds to support illegal activity)
[hereinafter (A)(i)]; *id.* § 1956(a)(1)(B)(i) (prohibiting laundering of illegal

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

proceeds to conceal their true nature) [hereinafter (B)(i)]. Donna Bishop entered

a guilty plea to count 11 of a superseding indictment which alleged Bishop

conspired to violate both (A)(i) and (B)(i) in violation of 18 U.S.C. § 1956(h).[1]

Relying on the language of the superseding indictment, Bishop's plea to the

entirety of count 11, and the plea colloquy, the district court concluded that it

could sentence Bishop for either of the offenses set out in count 11. Accordingly,

the district court sentenced Bishop under (A)(i), the provision with the higher

base offense level. *See* U.S.S.G. § 2S1.1(a). Bishop appeals, asserting that the

district court erred in relying on the superseding indictment and the factual basis

for the plea colloquy, rather than conducting an evidentiary hearing, to determine

which of the two provisions Bishop violated. This court exercises jurisdiction

pursuant to 28 U.S.C. § 1291 and **affirms**.

This case grew out of a Drug Enforcement Agency investigation of drug

trafficking activities between Kansas City and Oklahoma City. The investigation

ultimately determined that the source of the drugs was a cocaine conspiracy

headed by James Walton. Further investigation demonstrated that Bishop,

Walton's mother, was laundering the proceeds of the drug conspiracy through her

---

[1]Section 1956(h) provides that "[a]ny person who conspires to commit any offense defined in [§ 1956] shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." 18 U.S.C. § 1956(h).

restaurant, Big Mama's Grocery and Deli. An Internal Revenue Service investigation into the financial aspects of Bishop's restaurant revealed that money from the conspiracy was funneled into the restaurant's account and was then used to pay operating expenses of the conspiracy, including apartment rent, cellular phone bills, and pager bills. The proceeds were also used to buy vehicles for the co-conspirators and to legitimize their income.

Bishop was eventually indicted in three counts of a sixteen-count superseding indictment. Count 1 of the indictment charged Bishop with conspiring to distribute more than five kilograms of cocaine and 500 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 846. Count 11 charged Bishop with conspiracy to launder drug proceeds in violation of (A)(i), (B)(i), and § 1956(h). Count 12 charged Bishop with laundering drug proceeds in violation of (B)(i). Bishop ultimately entered into a plea agreement whereby she agreed "to enter a plea of guilty to count 11 of the Indictment, which charges a violation of Title 18, United States Code, Section 1956(a)(1)(A)(i)." In exchange for Bishop's plea to count 11, the United States agreed to recommend that Bishop be sentenced at the lowest end of the applicable Sentencing Guideline range, recommend that Bishop receive a two-level reduction for acceptance of responsibility, and to take no position with regard to Bishop's role in the offense.

Bishop pleaded guilty to Count 11 on July 23, 1996. During the plea hearing, the United States indicated that should the case go to trial, it could adduce evidence that money from the conspiracy was funneled into Bishop's restaurant, that Bishop laundered the proceeds through her business account in an effort to legitimize the proceeds, and that Bishop used the laundered funds to pay certain expenses of the conspiracy. Bishop and her counsel agreed that the United States could produce such evidence. Furthermore, although acknowledging that she had undertaken the acts alleged by the United States, Bishop indicated "[i]t was never my intentions to promote cocaine."

Following entry of the guilty plea to count 11, the United States Probation Office prepared a Presentence Report ("PSR"). The PSR indicated that a base offense level of twenty-three was appropriate because Bishop had pleaded guilty to conspiracy to violate (A)(i). *See* U.S.S.G. § 2S1.1(a) (establishing base offense level of 23 for violations of (A)(i) and base offense level of 20 for violations of (B)(i)). Bishop objected to the PSR's proposed base offense level. She asserted that the district court could not rely on the allegations in the indictment or her plea colloquy to determine the appropriate base offense level. Instead, Bishop asserted that the district court must hold an evidentiary hearing in which the United States must prove by substantial evidence that she conspired to violate

-4-

(A)(i).  Otherwise, according to Bishop, the district court was obligated to calculate her base offense level based on a violation of (B)(i).[2]

After reviewing the parties' memoranda on the issue, the district court overruled Bishop's objection.  The district court noted that count 11 charged a conspiracy to violate both subsections of § 1956(a)(1) and that by pleading guilty to the count Bishop had admitted all facts necessary to sustain a final judgment of guilt and lawful sentence.  The district court further recognized that at the plea hearing, Bishop admitted she had used the laundered proceeds to pay certain expenses of the conspiracy.  Accordingly, the district court concluded that a base offense level of twenty-three was appropriate to reflect a violation of (A)(i).

The resolution of Bishop's appeal is governed by this court's decision in *United States v. Bush*, 70 F.3d 557 (10th Cir. 1995).  In *Bush*, the defendant pleaded guilty to an indictment charging him with conspiring to distribute "cocaine (powder) and/or cocaine base (crack)." *Id.* at 559.  When the district

---

[2]Bishop's theory of the case is as follows.  Count 11 charged that she had conspired to launder drug money in violation of both (A)(i) and (B)(i).  If she were to go to trial on Count 11, the jury could convict if it found that she had conspired to violate either (A)(i) or (B)(i).  In such a case, however, if the jury returns a general verdict of guilt, the district court is obligated to sentence the defendant on the basis of the conspiracy objective yielding the lowest offense level. *See United States v. Pace*, 981 F.2d 1123, 1128-30 (10th Cir. 1992).  Bishop contends that her guilty plea is the equivalent of the general verdict of guilt in *Pace*, with the result that the district court is obligated to sentence her under the guideline for (B)(i) unless the United States can prove, at an evidentiary hearing, a violation of (A)(i).

court sentenced the defendant based on distribution of crack, the defendant appealed, claiming that because neither the indictment nor the plea colloquy established that distribution of crack, rather than powder cocaine, was the object of the conspiracy, the district court was obligated to sentence him on the objective yielding the lowest offense level. *See id.* at 560-61. This court agreed, holding:

> [W]e conclude if it is impossible to determine with a reasonable degree of certainty, either based on the indictment, the plea agreement, the petition for entry of a guilty plea, the colloquy at the change of plea hearing, the sentencing hearing, or some other part of the record, whether he intended to plead guilty to conspiring to distribute cocaine base, cocaine powder, or both, we must order the sentence to be vacated and direct the district court to resentence the defendant on the basis of the objective yielding the lowest offense level, or, if the government does not consent to resentencing, we must allow the defendant to withdraw his guilty plea and proceed to trial.

*Id.* at 561[3]

Accordingly, the question before this court is whether it is possible to determine "with a reasonable degree of certainty" that Bishop intended to plead guilty to conspiring to violate (A)(i). Based on the plea agreement, the indictment, and the plea colloquy,[4] we answer that question in the affirmative.

---

[3]During oral argument, Bishop's counsel indicated that he was not requesting that Bishop be allowed to withdraw her plea.

[4]Bishop's contention that the district court must hold an evidentiary hearing to determine the scope of Bishop's guilty plea is without merit. The district court is entitled to rely on the indictment and plea colloquy, as well as the rest of the record, in making this determination. *See United States v. Bush*, 70 F.3d 557, 561-63 (10th Cir. 1995).

Unlike the indictment in *Bush* which set out the objects of the conspiracy in the alternative with the term "and/or," the indictment at issue here alleges that Bishop conspired to violate both (A)(i) **and** (B)(i). Furthermore, the indictment clearly lists overt acts which constitute violations of both (A)(i) and (B)(i). In addition, the plea agreement clearly establishes that the parties contemplated a plea of guilty to a conspiracy with the objective of violating (A)(i). Paragraph one of that agreement specifically provides as follows: "Defendant, Donna Bishop[,] agrees to enter a plea of guilty to Count 11 of the Indictment, which charges a violation of Title 18, United States Code, Section 1956(a)(1)(A)(i)." It is also worth noting that had the parties truly contemplated a plea embracing a violation of (B)(i) only, the plea would have likely been to count 12 of the indictment, which alleged a violation of (B)(i), rather than to count 11, which alleged a conspiracy to violate both (A)(i) and (B)(i).[5] Finally, during the plea colloquy, Bishop unequivocally admitted the United States had evidence that the laundered proceeds were "used to pay operating expenses of the cocaine conspiracy, including apartment rent, cellular phone bills and pager bills" and admitted that she did, in fact, undertake those actions knowing they were against the law.[6]

---

[5]As noted above, the penalties for conspiracy to violate (A)(i) or (B)(i) are the same as the penalties for the consummated crimes. *See supra* note 1.

[6]Bishop makes much of her statement during the plea colloquy that she did not intend to "promote cocaine." According to Bishop, this statement must be interpreted as a refusal to plead guilty to conspiring to violate (A)(i). In rejecting

The record as a whole, and the indictment, plea agreement, and plea colloquy in particular, demonstrate that it is reasonably certain that Bishop intended to plead guilty to conspiring to violate (A)(i). Accordingly, the judgment and sentence of the United States District Court for the District of Kansas is hereby **AFFIRMED**.

ENTERED FOR THE COURT:

---

this contention, the district court stated as follows:

> While at her plea colloquy, Ms. Bishop said . . . "It was never my intentions to promote cocaine," . . . that is not a relevant inquiry here and has nothing to do with the analysis of all of this. By her plea and by her concession and admission by Counsel and personally that the Government had evidence that showed that . . . "the money then was used to pay operating expenses of the cocaine conspiracy, including apartment rent, cellular phone bills and pager bills," . . . she admitted that she intended to promote the carrying on of specified unlawful activity, here the conspiracy by her son and others, to distribute cocaine and crack cocaine.
>
> Whether she personally intended to promote cocaine or whether she personally finds cocaine repugnant is not the issue. She intended to promote the partnership in crime that James Walton and his associates had devised which itself was involved in selling cocaine. That is what she admitted in her plea and that is what independent evidence, apart from her plea, the truth of which she acknowledged at her plea hearing and which I've just quoted, established.

This court agrees with the district court's analysis of the issue and concludes that Bishop's statement that she did not intend to promote cocaine does not cast doubt on the conclusion that Bishop intended to plead guilty to conspiring to violate (A)(i).

-8-

Michael R. Murphy
Circuit Judge